IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TAMMIE DAVIS, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

      Plaintiff,

vs.

DEVANLAY RETAIL GROUP, INC.,
AND DOES 1 THROUGH 50,
INCLUSIVE,

      Defendants.

_____/

No. 2:11-CV-01719-KJM-CKD

ORDER

      On June 25, 2010, Tammie Davis filed suit against Devanlay Retail Group, Inc. ("Devanlay") on behalf of herself and others similarly situated in the Superior Court of California, County of Placer. (Compl., ECF 1.) Davis alleged that Devanlay violated the Song-Beverly Credit Card Act, Cal. Civ. Code § 1747.08, ("Song-Beverly") by requesting and recording the personal identification information ("PII") of their retail store customers who pay with credit cards, including when Davis made a purchase at a Lacoste store operated by Devanlay. (*Id.* ¶¶ 2, 10, 14-21.) Devanlay removed the case to this court on June 27, 2011. (ECF 1.) On June 5, 2011, Devanlay moved for summary

1

judgment. (ECF 20.)[1] Davis filed her opposition to the motion on July 11, 2012 (ECF 25) and Devanlay submitted its reply on July 20, 2012 (ECF 20). The court heard oral argument for Devanlay's motion for summary judgment on October 26, 2012. For the reasons set forth below, the court GRANTS Devanlay's motion for summary judgment.

I.  BACKGROUND

Devanlay has written "Policies and Procedures" and a "Company Orientation Handbook" ("Handbook") that it provides to new Lacoste store employees during training, which are also available to all store employees in hard copy and through the store's intranet. (Decl. of Jennifer Jackson, ECF 39-5 ¶¶ 5-6, 13.) Both the Policies and Procedures and the Handbook contain the following language:

> There are several state laws that prohibit retailers who accept credit or debit cards for purchases from asking customers for [PII] during a credit or debit card transaction. [PII] means information concerning the cardholder, other than information set forth on the credit or debit card, including, but not limited to, the cardholder's address, home or business telephone number, and social security number.
>
> Additionally, there is nothing that prevents [Devanlay] from soliciting a customer's address and telephone number for a store's mailing list, so long as the solicitation is done separate and apart from the credit or debit card transaction. Therefore, requests for this type of information should only be made after the purchase has been processed and finalized, and the customer must be told that providing the information is completely voluntary.

(*Id.* Ex. A, ECF 39-6; Ex. B, ECF 39-7 (emphasis omitted).) In the Policies and Procedures, this language is followed by a chart explaining the "Client Capture Laws State by State." The chart indicates

/////
/////
/////
/////

---

[1] Devanlay originally filed its motion for summary judgment and supporting documents in redacted form (ECF 20, 31) and Davis likewise filed her original opposition and supporting documents in redacted form (ECF 26). On August 6, 2012, the court ordered the parties to file unredacted versions. Although the filing dates in this order refer to the original versions of the filings, the court cites to pages within the unredacted versions filed at ECF 39, 43 and 44.

1 that in California, a cashier may not

> request, or require as a condition to accepting a credit/debit card as payment, that the cardholder write PII on the credit/debit card transaction form or otherwise; or that the cardholder provide PII, which [the cashier] then write[s], cause[s] to be written, or otherwise record[s] on the credit/debit card transaction form or otherwise [].

(Ex. A, ECF 39-6.) In the Handbook, the language is followed by a list of states, including California, in which the Handbook instructs that "[a cashier] can capture customer information AFTER the transaction has been processed." (Ex. C, ECF 39-8.) Devanlay tells its Lacoste cashiers during training that the transaction is processed once the customer has received his or her receipt. (Dep. of Jennifer Suzanne Jackson at 7, Ex. A, ECF 39-3.)

Davis visited Devanlay's retail store in Roseville, California on April 2, 2010. (Decl. of Tammie Davis ¶ 2, Ex. F, ECF 43-7.) She brought an item to the cash register to purchase it with her credit card. (*Id.* ¶ 3.) As Davis "was putting [her] credit card in [her] purse, [the cashier] asked [her], 'What's your [zip] code?'" (Dep. of Tammie Davis at 4, Ex. B, ECF 39-4.) Davis did not receive her merchandise until after the cashier requested her zip code. (*Id.* at 9.) At the October 26 hearing, the parties agreed that Davis did not remember whether the cashier had given Davis her receipt before asking for Davis's code.

II. SUMMARY JUDGMENT STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

3

1 FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

   III.   ANALYSIS

          1.   Devanlay's Policies Under Song-Beverly

The Song-Beverly Act "imposes fair business practices for the protection of consumers." *Florez v. Linens 'N Things, Inc.,* 108 Cal. App. 4th 447, 450 (2003) (citations omitted). To address some retailers' practice of using customers' PII obtained during credit card transactions to find their full addresses, *id.* at 449, Song-Beverly states that retailers may not:

> [r]equest, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide [PII], which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.

CAL. CIV. CODE § 1747.08(a). Specifically, Song-Beverly was enacted to address two concerns: "[F]irst, that with increased use of computer technology, very specific and personal information about a consumer's spending habits was being made available to anyone willing to pay for it; and second, that acts of harassment and violence were being committed by store clerks who obtained customers' phone numbers and addresses." *Florez*, 108 Cal. App. at 452 (citing *California Assembly Committee on*

4

*Finance and Insurance, Background Information Request on A.B. 2920*, 1989-1990 Sess. (Cal. 1990).[2] "[T]he Legislature intended to provide robust consumer protections by prohibiting retailers from soliciting and recording information about the cardholder that is unnecessary to the credit card transaction." *Pineda v. Williams-Sonoma Stores, Inc.*, 51 Cal. 4th 524, 536 (2011).

Song-Beverly does not entirely forbid stores from obtaining customers' personal information. In *Florez*, the court explained that stores whose customers voluntarily provide personal information do not violate Song-Beverly. 108 Cal. App. 4th at 451. Stores have several options to legally obtain customers' personal information:

> A merchant can easily delay the request [for a customer's personal information] until the customer tenders payment or makes his or her preferred method of payment known. If the payment is made with cash, and the customer is so inclined, personal identification information can be recorded at that time. Alternatively, retailers could delete a customer's personal identification information as soon as the customer reveals an intention to pay by credit card.

*Id.* at 451-52. The permissibility of a retailer's request for a customer's personal information turns on "whether a consumer would *perceive* the store's 'request' for information as a 'condition' of the use of a credit card." *Id.* at 451 (emphasis in original). Using this standard, the *Florez* court determined that a retailer's policy of requesting customers' phone numbers before customers announce that they plan to pay by credit card violated Song-Beverly. *Id.* at 453. The court rejected the retailer's argument that the "timing of the request eliminates any concern that the provision of such information is a condition of credit card payment," explaining that "[the retailer's] interpretation leads to an absurd conclusion, i.e., the retailer may evade the statutory prohibition by rushing to obtain the information before the customer makes his or her payment preference known. That interpretation, if allowed, would completely undermine the purpose of the statute." *Id.*

Other courts have reviewed retailers' policies under the standard articulated in *Florez*. For example, requesting a customer's personal information after the customer has handed his or her credit card to the cashier, but before the receipt is printed, violates Song-Beverly. *Juhline v. Ben Bridge*

---

[2] As requested by Davis, the court takes judicial notice of the legislative history providing additional evidence of the goals behind the Song-Beverly Act. (Pl.'s Request for Judicial Notice, ECF 43-10.)

*Jeweler, Inc.*, No. 11cv2906-WQH-NLS, 2012 WL 3986316, at *5 (S.D. Cal. Sept. 11, 2012). In contrast, a retailer's request for a customer's personal information after the customer indicated he or she was a member of the retailer's rewards program does not violate Song-Beverly because the customer would reasonably understand that retailer would use the information to look up membership information in the retailer's database, rather than as a condition to using a credit card. *Gass v. Best Buy Co., Inc.*, 279 F.R.D. 561, 572-73 (C.D. Cal. 2012).

      Devanlay argues that its policy for obtaining customers' zip codes is consistent with Song-Beverly because the policy instructs cashiers to ask for a customer's zip code only after the customer has already received her receipt, in contrast to the policy of requesting a customer's personal identification information before the customer reveals she wants to pay by credit card that was struck down in *Florez*. (Def.'s Mot. for Summ. J. at 16, ECF 39.) Davis responds that even at the moment when the customer has been given the receipt, "the customer is still engaged in the transaction while standing at the same point-of-sale and interacting with the same cashier." (Pl.'s Opp'n to Mot. for Summ. J. at 10, ECF 43.) Davis contends that Devanlay's policy violates Song-Beverly, as the transaction is still ongoing. (*Id.*)

      Under *Florez*, the crucial issue in this case is not whether the transaction has reached an official end when the cashier requests personal information from the customer; it is whether under Devanlay's policy, a customer would reasonably believe that providing the zip code is necessary to complete the transaction. Although Davis argues that her deposition shows she believed her zip code was necessary to make her purchase (Pl.'s Opp'n to Mot. for Summ. J. at 17, ECF 43), her personal belief is irrelevant. Rather, Devanlay's policy must be evaluated under an objective standard. *See, e.g., Korn v. Polo Ralph Lauren Corp.*, 644 F. Supp. 2d 1212, 1216 (E.D. Cal. 2008) (plaintiff's subjective belief that personal information was necessary to complete the transaction was not critical to determination of whether a store's policy violated Song-Beverly). Viewed objectively, Devanlay's policy of waiting until the customer has her receipt in hand conveys that the transaction has concluded and that providing a zip code is not necessary to complete the transaction. (*See* Pl.'s Opp'n to Mot for Summ. J. at 17, ECF 39.) Davis provides no countervailing reasonable interpretation.

Davis makes additional arguments but they mischaracterize the law defining permissible practices under Song-Beverly.  First, Davis argues that the language of Section 1747.08(a) does not allow retailers to "request[] [PII] and then record[] it." (Pl.'s Opp'n to Mot. for Summ. J. at 15, ECF 43). Defendants are correct that this statutory interpretation would mean that retailers may never request and record customers' PII and exceeds Song-Beverly's focus on conditions of accepting a credit card as payment.  *Gass*, 279 F.R.D. at 569 (noting that under plaintiff's interpretation, "nothing ties a violation of [Song-Beverly] to a credit card transaction at all").  Additionally, the *Pineda* court's statement that "requesting and recording a cardholder's zip code, without more, violates [Song Beverly]," 51 Cal. 4th at 527, was merely clarifying that zip codes alone without street address information still constitute PII.

    2.   Safe Harbor Provision

Devanlay argues that even if the cashier who handled Davis's transaction violated Devanlay's official policies by requesting Davis's zip code before giving her a receipt, Devanlay itself is not liable under Song-Beverly because of the statute's "Safe Harbor" provision.  (Def.'s Mot. for Summ. J. at 12, ECF 39.)  This provision states that

> [N]o civil penalty shall be assessed for a violation of this section if the defendant shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error made notwithstanding the defendant's maintenance of procedures reasonably adopted to avoid that error.

CAL. CIV. CODE § 1747.08(e).  Although Davis disputes that Devanlay's policy meets the requirements of the Safe Harbor provision, she also argues that the provision is irrelevant because the cashier who conducted her transaction acted according to Devanlay's policy.  (Pl.'s Opp'n to Mot. for Summ. J. at 20-21, ECF 43.)  The court has determined that Devanlay's policy does not violate Song-Beverly.  However, if it did, the Safe Harbor Provision shields Devanlay from liability.  If the cashier requested Davis's zip code before giving Davis her receipt, this would have been an unintentional error that violated Devanlay's policy.  *See Romeo v. Home Depot*, 2007 WL 3047105, No. 06CV1505 IEG (WMc), at *3 (S.D. Cal. Oct. 16, 2007) (explaining that the Safe Harbor provision applies when an individual store employee acts in violation of official store policy).

/////

/////

Accordingly, for the foregoing reasons, defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED: December 14, 2012.

_____
UNITED STATES DISTRICT JUDGE